UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

R.A.R.B.

                      Petitioner,

        v.

LaDeon FRANCIS, Field Office Director of
Enforcement and Removal Operations, New
York Field Office, Immigration and Customs
Enforcement; Todd LYONS, Acting Director,
Immigration and Customs Enforcement; Kristi
NOEM, Secretary, U.S. Department of
Homeland Security; U.S. DEPARTMENT OF
HOMELAND SECURITY; Pamela BONDI,
U.S. Attorney General; EXECUTIVE OFFICE
FOR IMMIGRATION REVIEW.

                      Respondents.

Case No. 1:26-cv-264

**PETITION FOR WRIT OF
HABEAS CORPUS**

## INTRODUCTION

1.      Petitioner R.A.R.B. is an asylum seeker from Venezuela who is, on information and belief, as of the filing of this petition in the physical custody of Respondents at 26 Federal Plaza in New York, New York. [1]

2.      Petitioner, a citizen of Venezuela, was granted Temporary Protected Status in the United States. On information and belief, he has no criminal record.

3.      On January 12, 2026, Respondent appeared at an appointment with the Asylum Office in Bethpage, New York. On information and belief, rather than being interviewed about his asylum application, he was served with a Notice to Appear (NTA) and detained by Immigration and Customs Enforcement (ICE).

4.      Prior to being detained, Petitioner applied and received an Employment Authorization Document (EAD). He was also granted Temporary Protected Status. As of today, his removal proceedings were docketed with the Immigration Court, with his first hearing scheduled for January 14, 2026.

5.      Based on similar cases, Petitioner is being held pursuant to 8 U.S.C. § 1226(a). Based on similar cases, Respondents did not make any individualized findings as to Petitioner's risk of flight or danger to the community before detaining him.

6.      Since arriving in the United States, Petitioner has become an active member of his community and is engaged in supporting his community as an employee of the New York City Council, where he has worked since 2025.

7.      On information and belief, Petitioner has had no arrests, charges, or convictions in the United States or otherwise at any time and has complied with all requests from Respondents.

---

[1] As of 8:12 pm of today's date, Petitioner did not appear in the ICE Detainee Locator or the Federal Bureau of Prisons inmate lookup, and it is Respondents' practice to hold detainees in this posture at 26 Federal Plaza.

8.      Based on Respondents' treatment of similarly situated noncitizens, Respondents appear to be taking the position that Petitioner is being held pursuant to 8 U.S.C. § 1225(b) and therefore ineligible to be released on bond.  Petitioner's detention on this basis violates the Immigration and Nationality Act, as Section 1225(b) does not apply to individuals like Petitioner who previously entered and are now residing in the United States.  Instead, such individuals are subject to a different statute, § 1226(a) that allows for release on conditional parole or bond.

9.      As Respondents have violated the Immigration and Nationality Act and Petitioner's due process rights, Petitioner seeks a writ of habeas corpus requiring that he be released immediately.

## JURISDICTION

10.      Petitioner is in the physical custody of Respondents. On information and belief, Petitioner is detained at 26 Federal Plaza in New York, New York, as Respondents typically process individuals detained in the New York area at this location.[2]

11.      This action arises under the Constitution of the United States and the Immigration and National Act (INA), 8 U.S.C. § 1101 *et seq.*

12.      This Court has jurisdiction under 28 U.S.C. § 2241(c)(5) (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, section 9, clause 2 of the United States Constitution (the Suspension Clause).

13.      This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

---

[2] As of 8:12 pm of today's date, Petitioner did not appear in the ICE Detainee Locator or the Federal Bureau of Prisons inmate lookup.

**VENUE**

14.    Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493-500 (1973), venue lies in the United States District Court for the Southern District of New York, the judicial district in which Petitioner currently is detained.

15.    Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States, and because a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of New York.

**REQUIREMENTS OF 28 U.S.C. § 2243**

16.    The Court must grant the petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

17.    Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

**PARTIES**

18.    Petitioner is R.A.R.B. After arresting Petitioner in New York, New York, on information and belief, ICE did not set bond and Petitioner is unable to obtain review of his custody by an immigration judge, pursuant to the Board's decisions in *Matter of Q. Li*, 29 I&N

Dec. 66 (BIA 2025) and *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), notwithstanding the nationwide holding in *Maldonado Bautista v. Noem*, 5:25-cv-01873-SSS-BFM (Dec. 18, 2025 N.D. Cal.), as reports indicate that immigration judges are declining to follow the federal court's decision.

19.    Respondent LaDeon Francis is the Director of the New York Field Office of ICE's Enforcement and Removal Operations division. As such, Mr. Francis is Petitioner's immediate custodian and is responsible for Petitioner's detention and removal. He is named in his official capacity. Respondent Francis's address is New York ICE Field Office Director, 26 Federal Plaza, New York, New York 10278.

20.    Respondent Todd M. Lyons is named in his official capacity as the Acting Director of Immigration and Customs Enforcement. As the Acting Director of ICE, he is responsible for the administration and enforcement of the immigration laws of the United States and routinely transacts business in this District. He supervises Respondent LaDeon Francis. His address is ICE, Office of the Principal Legal Advisor, 500 12th St. SW, Mail Stop 5900, Washington, DC 20536-5900.

21.    Respondent Kristi Noem is the Secretary of the Department of Homeland Security. She is responsible for the implementation and enforcement of the Immigration and Nationality Act (INA), and oversees ICE, which is responsible for Petitioner's detention. Ms. Noem has ultimate custodial authority over Petitioner and is sued in her official capacity. Respondent Noem's address is U.S. Department of Homeland Security, 800 K Street, N.W. #1000, Washington, District of Columbia 20528.

22.    Respondent Department of Homeland Security (DHS) is the federal agency responsible for implementing and enforcing the INA, including the detention and removal of

noncitizens. DHS's address is U.S. Department of Homeland Security, 800 K Street, N.W. #1000, Washington, District of Columbia 20528.

23. Respondent Pamela Bondi is the Attorney General of the United States. She is responsible for the Department of Justice, of which the Executive Office for Immigration Review and the immigration court system it operates is a component agency. She is sued in her official capacity. Respondent Bondi's address is U.S. Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, District of Columbia 20530.

24. Respondent Executive Office for Immigration Review (EOIR) is the federal agency responsible for implementing and enforcing the INA in removal proceedings, including for custody redeterminations in bond hearings. EOIR's address is 5107 Leesburg Pike, Falls Church, VA 22041.

## LEGAL FRAMEWORK

**Detention Authority**

24. The INA prescribes three basic forms of detention for the vast majority of noncitizens in removal proceedings.

25. First, 8 U.S.C. § 1226 authorizes the detention of noncitizens in standard removal proceedings before an IJ. *See* 8 U.S.C. § 1229a. Individuals in § 1226(a) detention are generally entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, *see* 8 U.S.C. § 1226(c).

26. Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under § 1225(b)(2).

27. Last, the INA also provides for detention of noncitizens who have been ordered removed, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)–(b).

28. This case concerns the detention provisions at §§ 1226(a) and 1225(b)(2).

29. The detention provisions at § 1226(a) and § 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104-–208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226(a) was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).

30. Following the enactment of the IIRIRA, EOIR drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under § 1225 and that they were instead detained under § 1226(a). *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

31. Thus, in the decades that followed, most people who entered without inspection and were placed in standard removal proceedings received bond hearings, unless their criminal history rendered them ineligible pursuant to 8 U.S.C. § 1226(c). That practice was consistent with many more decades of prior practice, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. *See* 8 U.S.C. § 1252(a) (1994); *see also* H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that § 1226(a) simply "restates" the detention authority previously found at § 1252(a)).

32. On May 15, 2025, the BIA issued their decision in *Matter of Q. Li*, finding that an applicant for admission who is arrested and detained without a warrant while arriving in the United States, whether or not at a port of entry, and subsequently placed in removal proceedings

is detained under 8 U.S.C. § 1225(b) (2018), and is ineligible for any subsequent release on bond. Further, in *Matter of Q. Li*, the BIA held that a noncitizen initially detained under 8 U.S.C. § 1225(b), who is released from detention pursuant to a grant of parole, and whose grant of parole is subsequently terminated, is returned to custody under section 235(b) pending the completion of removal proceedings.

32. On July 8, 2025, ICE, "in coordination with" DOJ, announced a new policy that rejected well-established understanding of the statutory framework and reversed decades of practice.

33. The new policy, entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission,"[1] claims that all persons who entered the United States without inspection shall now be subject to mandatory detention provision under § 1225(b)(2)(A). The policy applies regardless of when a person is apprehended, and affects those who have resided in the United States for months, years, and even decades.

34. On September 5, 2025, the BIA adopted this same position in a published decision, *Matter of Yajure Hurtado*. There, the Board held that all noncitizens who entered the United States without admission or parole are subject to detention under § 1225(b)(2)(A) and are ineligible for IJ bond hearings.

35. Since Respondents adopted their new policies, dozens of federal courts have rejected their new interpretation of the INA's detention authorities. Courts have likewise rejected *Matter of Yajure Hurtado*, which adopts the same reading of the statute as ICE.

36. Even before ICE or the BIA introduced these nationwide policies, IJs in the Tacoma, Washington, immigration court stopped providing bond hearings for persons who entered the United States without inspection and who have since resided here. There, the U.S. District Court

in the Western District of Washington found that such a reading of the INA is likely unlawful and that § 1226(a), not § 1225(b), applies to noncitizens who are not apprehended upon arrival to the United States. *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025).

37. Subsequently, court after court has adopted the same reading of the INA's detention authorities and rejected ICE and EOIR's new interpretation. *See, e.g.*, *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025); *Diaz Martinez v. Hyde*, No. CV 25-11613-BEM, --- F. Supp. 3d ----, 2025 WL 2084238 (D. Mass. July 24, 2025); *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted*, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Maldonado v. Olson*, No. 0:25-cv-03142-SRN-SGE, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW (DFMx), 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Samb v. Joyce*, No. 25 CIV. 6373 (DEH), 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Kostak v. Trump*, No. 3:25-cv-01093-JE-KDM, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Jose J.O.E. v. Bondi*, No. 25-CV-3051 (ECT/DJF), --- F. Supp. 3d ----, 2025 WL 2466670 (D. Minn. Aug. 27, 2025) *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486-BRM-EAS, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Vasquez Garcia v. Noem*, No. 25-cv-02180-DMS-MM, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Zaragoza Mosqueda v. Noem*, No. 5:25-CV-02304 CAS (BFM), 2025 WL

2591530 (C.D. Cal. Sept. 8, 2025); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Sampiao v. Hyde*, No. 1:25-CV-11981-JEK, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); *see also, e.g.*, *Palma Perez v. Berg*, No. 8:25CV494, 2025 WL 2531566, at *2 (D. Neb. Sept. 3, 2025) (noting that "[t]he Court tends to agree" that § 1226(a) and not § 1225(b)(2) authorizes detention); *Jacinto v. Trump*, No. 4:25-cv-03161-JFB-RCC, 2025 WL 2402271 at *3 (D. Neb. Aug. 19, 2025) (same); *Anicasio v. Kramer*, No. 4:25-cv-03158-JFB-RCC, 2025 WL 2374224 at *2 (D. Neb. Aug. 14, 2025) (same);

38. Courts have almost entirely rejected DHS's and EOIR's new interpretation because it defies the INA. As the *Rodriguez Vazquez* court and others have explained, the plain text of the statutory provisions demonstrates that § 1226(a), not § 1225(b), applies to people like Petitioner.  This Court found someone in the exact same position as Petitioner to not be an arriving alien. *Qasemi v. Francis*, No. 1:25-cv-10029-LJL, 2025 WL 3654098 (S.D.N.Y. Dec. 17, 2025); *see also Rueda Torres v. Francis*, No 25 CIV. 8408, 2025 WL 3168759, at *6 (S.D.N.Y. Nov. 13, 2025)

39. On November 25, 2025, the U.S. District Court for the Central District of California issued an order in *Maldonado Bautista v. Santacruz*, certifying a nationwide class of noncitizens who are in immigration detention and being denied access to a bond hearing based on DHS's and EOIR's new interpretation, and granting declaratory relief to the entire class, holding that the holding that the government is unlawfully subjecting them to mandatory (meaning no-bond) detention and that class members are eligible for release on bond under the immigration laws.  However, reports indicate EOIR has instructed immigration judges to ignore the Court's order.

40. Section 1226(a) applies by default to all persons "pending a decision on whether

the [noncitizen] is to be removed from the United States." These removal hearings are held under § 1229a, to "decid[e] the inadmissibility or deportability of a[] [noncitizen]."

41. The text of § 1226 also explicitly applies to people charged as being inadmissible, including those who entered without inspection. *See* 8 U.S.C. § 1226(c)(1)(E). Subparagraph (E)'s reference to such people makes clear that, by default, such people are afforded a bond hearing under subsection (a). As the *Rodriguez Vazquez* court explained, "[w]hen Congress creates 'specific exceptions' to a statute's applicability, it 'proves' that absent those exceptions, the statute generally applies." *Rodriguez Vazquez*, 779 F. Supp. 3d at 1257 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010)); *see also Gomes*, 2025 WL 1869299, at *7.

42. Section 1226 therefore leaves no doubt that it applies to people who face charges of being inadmissible to the United States, including those who are present without admission or parole.

43. By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who recently entered the United States. The statute's entire framework is premised on inspections at the border of people who are "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2)(A). Indeed, the Supreme Court has explained that this mandatory detention scheme applies "at the Nation's borders and ports of entry, where the Government must determine whether a[] [noncitizen] seeking to enter the country is admissible." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

44. Accordingly, the mandatory detention provision of § 1225(b)(2)(A) does not apply to people like Petitioner, who have already entered and were residing in the United States for years at the time they were apprehended.

*Civil Immigration Detention*

25.    Congress has authorized civil detention of noncitizens in removal proceedings for specific, non-punitive purposes. *See Jennings v. Rodriguez*, 138 S.Ct. 830, 833 (2018); *Zadvydas*, 533 U.S.  690; *Demore*, 538 U.S. 528.

26.    To comport with due process, civil detention must bear a reasonable relationship to its two regulatory purposes—to ensure the appearance of noncitizens at future hearings and to prevent danger to the community pending the completion of removal. *Zadvydas*, 533 U.S. at 690-691; *Velasco Lopez v. Decker*, 978 F.3d 842, 854 (2d Cir. 2020).

27.    A person's liberty cannot be infringed upon without "adequate procedural protections." *Zadvydas*, 533 U.S. at 690-91. The Second Circuit has held that the *Matthews v. Eldridge* balancing test is applicable to determine the adequacy of process in the context of civil immigration confinement. *Velasco Lopez*, 978 F.3d at 851 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). This test requires process sufficient to mitigate the risk of erroneous deprivation of a liberty interest. Revocation of conditional release from confinement, even civil immigration confinement, infringes on a protected liberty interest. The liberty interest in even conditional release is well-established in the context of parole; probation; and freedom from civil immigration confinement. *See Valdez v. Joyce*, No. 25 CIV. 4627 (GBD), 2025 LX 119339, 2025 WL 1707737, at *3 (S.D.N.Y. June 18, 2025) (finding immigration petitioner's "liberty interest is clearly established"); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) (applying case law from the probation and parole contexts to conclude that the non-citizen petitioner had a "liberty interest in remaining out of [immigration] custody").

28.    Despite these baseline requirements, Respondents now regularly re-detain individuals notwithstanding an earlier determination to release them and do so without according

any notice or process whatsoever. These redetentions violate noncitizens' right to due process. *See Chipantiza-Sisalema v. Francis*, No. 25 CIV. 5528 (AT), 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025) (ordering the immediate release of a petitioner redetained by ICE where she did not pose a threat or danger to the community and her sudden redetention violated her right to due process); *Valdez v. Joyce*, No. 25 CIV. 4627 (GBD), 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025) (ordering the release of petitioner redetained after an immigration court hearing and concluding "Respondents ongoing detention of Petitioner with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond, violates his due process rights.").

### *Release is the Only Appropriate Remedy*

29.     Numerous courts in this district have ordered immediate release in similar circumstances.  *See, e.g., Rueda Torres v. Francis*, No 25 CIV. 8408, 2025 WL 3168759, at *6 (S.D.N.Y. Nov. 13, 2025); *Qasemi v. Francis*, No. 25-cv-10029, 2025 WL 3654098 (Dec. 17, 2025).

30.     Despite this, Respondents have asserted that bond is an appropriate remedy, citing *Romero Perez v. Francis*, No. 25 CIV 8112, 2025 WL 3110459 (S.D.N.Y. Nov. 6, 2025). However, that case alone demonstrates why such bond hearings are futile and why outright release is required.  In *Romero Perez*, notwithstanding Judge Koetl's order that a burden shifted bond hearing be held within seven days, the Immigration Judge first refused to hold a hearing on the merits, denying bond on a lack of jurisdiction, requiring that an emergency motion be filed by Respondents.  *See* Pet.'s Mot. To Enforce Nov. 6, 2025 Order 1, No. 25 CIV 8112 ECF No. 31 (Nov. 10, 2025).  Following the emergency motion, the Immigration Judge held a second hearing to grant bail.  However, as soon as bail was granted, Respondents invoked an automatic

stay pursuant to 8 C.F.R.10034.19(i)(23) to bar the Petitioner's release. *See* Pet.'s Mot. To

Enforce Nov. 6, 2025 Order 1, No. 25 CIV 8112 ECF No. 33 (Nov. 10, 2025). Petitioner was

only released after he was denied twice the opportunity to be released and only after two

emergency motions had to be filed with the court.

31.     To avoid the complete undermining of Petitioner's actual release from detention,

outright release – not a bond hearing – is necessary.

## FACTS

32.     Petitioner is an asylum seeker from Venezuela who fled persecution. After

entering the United States, he was granted Temporary Protected Status. On information and

belief, he also filed an application for asylum with the Asylum Office, as he was not placed in

removal proceedings upon entry.

33.     On information and belief, until his appointment at the Asylum Office on January

12, 2026, he was not scheduled for check-ins with ICE in the United States. On information and

belief, he timely filed his asylum application with the Asylum Office, who subsequently

transferred his case to Immigration Court on the day he appeared at that office for an interview.

34.     On that same day, January 12, 2026, Petitioner was arrested by ICE.

35.     On information and belief, ICE is currently holding Petitioner at 26 Federal Plaza,

as is their practice in similar cases.

36.     On information and belief, following Petitioner's arrest, ICE issued a custody

determination to continue Petitioner's detention without conducting an individualized

determination as to his risk of flight or danger to the community.

37.     Pursuant to *Matter of Yajure Hurtado*, the immigration judge is unlikely to

consider Petitioner's bond request.

38.     As a result, Petitioner remains in detention. Without relief from this court, he faces the prospect of months, or even years, in immigration custody, community and would suffer undue hardship.

## CLAIMS FOR RELIEF

### <u>COUNT I</u>
### Violation of the INA

39.     Petitioner incorporates by reference the allegations of fact set forth in the preceding paragraphs.

40.     The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. As relevant here, it does not apply to those who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings by Respondents. Such noncitizens are detained under § 1226(a), unless they are subject to § 1225(b)(1), § 1226(c), or § 1231.

41.     The application of § 1225(b)(2) to Petitioner unlawfully mandates their continued detention and violates the INA.

### <u>COUNT TWO</u>
### <u>VIOLATION OF REGULATIONS</u>
### <u>8 C.F.R. §§ 236.1, 1236.1, and 1003.19</u>

42.     Petitioner incorporates by reference the allegations of fact set forth in preceding paragraphs.

43.     In 1997, after Congress amended the INA through IIRIRA, EOIR and the then-Immigration and Naturalization Service issued an interim rule to interpret and apply IIRIRA. Specifically, under the heading of "Apprehension, Custody, and Detention of [Noncitizens]," the

agencies explained that "[d]espite being applicants for admission, [noncitizens] who are present without having been admitted or paroled (formerly referred to as [noncitizens] who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. at 10323 (emphasis added). The agencies thus made clear that individuals who had entered without inspection were eligible for consideration for bond and bond hearings before IJs under 8 U.S.C. § 1226 and its implementing regulations.

44.     Nonetheless, pursuant to *Matter of Yajure Hurtado*, EOIR has a policy and practice of applying § 1225(b)(2) to individual like Petitioner.

45.     The application of § 1225(b)(2) to Petitioner unlawfully mandates their continued detention and violates 8 C.F.R. §§ 236.1, 1236.1, and 1003.19.

**COUNT THREE**
**VIOLATION OF THE DUE PROCESS CLAUSE**
**OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION**
**SUBSTANTIVE DUE PROCESS**

46.     Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

47.     Petitioner is being detained without cause and in violation of his Constitutional right to Due Process under the Fifth Amendment.

48.     The government's ongoing detention of Petitioner is unjustified and unlawful.

49.     The goals of immigration detention are to "ensur[e] [his] appearance ... at future immigration proceedings," and to "[p]revent[] danger to the community." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Neither goal is served by Petitioner's detention.

50.     Petitioner was detained by ICE at a scheduled asylum interview, demonstrating that there was no need for detention to ensure his presence at any upcoming hearings.

51.　　In addition, upon information and belief, Petitioner has no criminal history and presents no danger to the community.

52.　　Petitioner had also been granted Temporary Protected Status by U.S. Citizenship and Immigration Services.

53.　　The Due Process Clause guarantees detained immigrants the right to be detained in a safe situation, free from punitive conditions of confinement. *See* U.S. Const. amend. V.

54.　　Respondents' failure to adequately protect Petitioner from these punitive conditions, or release him from detention altogether, violates his due process rights.

55.　　Petitioner has no adequate remedy at law.

56.　　For these reasons, Petitioner's detention violates the Due Process Clause of the Fifth Amendment.

**COUNT FOUR**
**VIOLATION OF THE DUE PROCESS CLAUSE**
**OF THE FIFTH AMENDMNET TO THE UNITED STATES CONSTITUTION**
**PROCEDURAL DUE PROCESS**

57.　　Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

58.　　The government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

59.　　Petitioner has a fundamental interest in liberty and being free from official restraint.

60.    The government's detention of Petitioner without an individualized determination whether he is a flight risk or danger to others violates their right to due process.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Court grant the following relief:

a.    Assume jurisdiction over this matter;

b.    Order that Petitioner shall not be transferred outside the Southern District of New York,, the Eastern District of New York, or the District of New Jersey while this habeas petition is pending;

c.    Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;

d.    Issue a Writ of Habeas Corpus requiring that Respondents release Petitioner or, in the alternative, provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days;

e.    Declare that Petitioner's detention is unlawful;

f.    Award Petitioner attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law; and

g.    Grant any other and further relief that this Court deems just and proper.

DATED this 8th day of January, 2026.

/s/Melissa Lim Chua
Melissa Lim Chua
Lauren Nicole Kostes
Lauren Reiff
*Pro Bono Counsel for the Petitioner*

### <u>VERIFICATION PURSUANT TO 28 U.S.C. § 2242</u>

I am submitting this verification on behalf of the Petitioners because our organization represents them on Petitioner's petition for habeas corpus.  On information and belief, I hereby verify the factual statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.


Date: January 12, 2026                                   ___/s/Melissa Chua_____