𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 ℭ𝔬𝔲𝔯𝔱
𝔖𝔬𝔲𝔱𝔥𝔢𝔯𝔫 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔬𝔣 𝔑𝔢𝔴 𝔜𝔬𝔯𝔨

R.A.R.B.,

                         *Petitioner*,

- against -

LaDeon Francis, Field Office Director of Enforcement and Removal Operations, New York Field Office, Immigration and Customs Enforcement; Todd Lyons, Acting Director, Immigration and Customs Enforcement; Kristi Noem, Secretary, U.S. Department of Homeland Security; U.S. Department of Homeland Security; Pamela Bondi, U.S. Attorney General; Executive Office For Immigration Review,

                         *Respondents*.

Case No. 26-cv-264 (JPC)

**BRIEF OF AMICUS CURIAE NEW YORK CITY COUNCIL IN SUPPORT OF PETITIONER**

Richard Dearing
Devin Slack
Bo Malin-Mayor
Jamison Davies
   *of Counsel*

February 6, 2026

Muriel Goode-Trufant
*Corporation Counsel*
*of the City of New York*
Attorney for Amicus Curiae
100 Church Street
New York, New York 10007
212-356-2490
jdavies@law.nyc.gov

**TABLE OF CONTENTS**

                                                                                                    **Page**

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT AND INTEREST OF AMICUS CURIAE ................................................................................................. 1

ARGUMENT: MR. RUBIO SHOULD BE IMMEDIATELY RELEASED FROM ICE CUSTODY ................................................................................ 3

    A.  Mr. Rubio has Temporary Protected Status allowing him to live and work in the United States. .......................................... 3

    B.  ICE's detention of Mr. Rubio is unlawful. ................................ 7

CONCLUSION ................................................................................... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Afr. Communities Together v. Lyons*,
  799 F. Supp. 3d 362 (S.D.N.Y. 2025) ...................................................................................6

*Auto-Owners Ins. Co. v. Potter*
  242 F. App'x 94 (4th Cir. 2007) ..........................................................................................11

*Chen v. Almodovar*,
  2026 WL 100761 (S.D.N.Y. Jan. 14, 2026) ..........................................................................7

*Coleman v. Tollefson*,
  575 U.S. 532 (2015) ............................................................................................................11

*Cooper v. Town of E. Hampton*,
  83 F.3d 31 (2d Cir. 1996) ...................................................................................................11

*Doe v. Noem*,
  2026 WL 184544 (N.D. Ill. Jan. 23, 2026) ............................................................................8

*E.J.C.C. v. Joyce*,
  25-cv-08805 (S.D.N.Y. 2025) ...............................................................................................6

*Fontanelli v. Francis*,
  2025 LX 430674 (S.D.N.Y. Sep. 29, 2025) ..........................................................................6

*Fuentes v. Holder*,
  548 F. App'x 736 (2d Cir. 2013) ..........................................................................................7

*Gonzalez v. Noem*,
  No. 5:26-cv-00357 (C.D. Cal. February 5, 2026) ...............................................................13

*Haaland v. Brackeen*,
  599 U.S. 255 (2023) ............................................................................................................13

*Haitian Evangelical Clergy Ass'n v. Trump*,
  789 F. Supp. 3d 255 (E.D.N.Y. 2025) ...................................................................................8

*J.C.G. v. Genalo*,
  2025 WL 88831 (S.D.N.Y. Jan. 14, 2025) ............................................................................7

*Jean-Francois v. Soto*,
  2026 WL 241860 (D.N.J. Jan. 29, 2026) ..............................................................................7

## TABLE OF AUTHORITIES (cont'd)

Page(s)

*Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*,
    571 U.S. 191 (2014) ............................................................................................13

*In re Mortgages Ltd.*,
    771 F.3d 623 (9th Cir. 2014) ..............................................................................11

*Nat'l TPS All. v. Noem*,
    2026 WL 226573 (9th Cir. Jan. 28, 2026)..............................................1, 3, 9, 12

*Nat'l TPS All. v. Noem*,
    798 F. Supp. 3d 1008 (N.D. Cal. 2025)................................................................8

*Nat'l TPS All. v. Noem*,
    798 F. Supp. 3d 1108 (N.D. Cal. 2025)..............................................................10

*Nat'l TPS Alliance v. Noem*,
    2025 WL 3539156 (N.D. Cal. Dec. 10, 2025).........................................9, 10, 11

*Nat'l TPS Alliance v. Noem*,
    No. 25-cv-01766 (N.D. Cal.) ........................................................................10, 11

*Nat'l TPS Alliance v. Noem*,
    No. 26-187 (9th Cir.)...........................................................................................11

*Noem v. Nat'l TPS All.*,
    146 S. Ct. 23 (2025) ...........................................................................................10

*O'Connor v. Pierson*,
    568 F.3d 64 (2d Cir. 2009).................................................................................12

*Perez v. Noem*,
    2026 WL 206222 (M.D. Fla. Jan. 27, 2026)..................................................8, 13

*Sanchez Puentes v. Garite*,
    780 F. Supp. 3d 682 (W.D. Tex. 2025) ................................................................8

*Sanchez v. Mayorkas*,
    593 U.S. 409 (2021) .........................................................................................3, 7

*Sunshine Coal Co. v. Adkins*,
    310 U.S. 381 (1940) ...........................................................................................12

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) ...........................................................................................12

iii

## TABLE OF AUTHORITIES (cont'd)

Page(s)

*United States v. Mendoza*,
  464 U.S. 154 (1984) ......................................................................................... 12

*Velasco Lopez v. Decker*,
  978 F.3d 842 (2d Cir. 2020) ............................................................................... 6

**Statutes**

8 U.S.C. § 1254a ................................................................................................. 3, 9

8 U.S.C. § 1254a(b)(2) ............................................................................................ 9

8 U.S.C. § 1254a(d)(4) ......................................................................................... 3, 7

**Other Authorities**

86 Fed. Reg. 13,574 (Mar. 9, 2021) ......................................................................... 4

87 Fed. Reg. 55,024 (Sept. 8, 2022) ........................................................................ 4

88 Fed. Reg. 68,130 (Oct. 3, 2023) .......................................................................... 4

90 Fed. Reg. 5,961 (Jan. 17, 2025) .......................................................................... 4

90 Fed. Reg. 8805 (Feb. 3, 2025) ............................................................................ 8

90 Fed. Reg. 9040 (Feb. 5, 2025) ............................................................................ 8

*Fact Sheet*, Forum Together (January 13, 2026),
  https://perma.cc/XQR4-NU5U ........................................................................... 1

Gwynne Hogan, *City Council Staffer Denied Bond, Deemed 'Danger
  to Society'*, The City (Feb. 2, 2026, 3:17 p.m),
  https://perma.cc/M6GL-JASK ............................................................................ 7

*Mutuality Doctrine,* Black's Law Dictionary (12th ed. 2024) ................................ 12

## PRELIMINARY STATEMENT
## AND INTEREST OF AMICUS CURIAE

The New York City Council submits this amicus brief in support of Rafael Rubio's petition for a writ of habeas corpus. Mr. Rubio is a valued employee of the City Council with close ties to our community. His petition should be granted.

Mr. Rubio has lived and worked in the United States legally since 2021, when he received Temporary Protected Status (TPS) due to ongoing crisis conditions in his home country of Venezuela. TPS is an immigration designation that allows individuals who cannot safely return to their home countries because of armed conflict, natural disaster, or other extreme circumstances to live and work legally in the United States. New York City is home to tens of thousands of TPS holders like Mr. Rubio,[1] many of whom are long-term residents deeply integrated into their communities. They are our colleagues, our neighbors, and our friends.

Mr. Rubio's experience offers a fine example of how extending temporary protected status has allowed many people to thrive while they remain in the United States. Mr. Rubio is a hardworking and reliable City Council employee who "goes the extra mile" to help his coworkers. Our community would be lesser without him.

The federal government has sought to revoke TPS for Venezuela and numerous other countries, sending City residents such as Mr. Rubio back to countries that are concededly unsafe. These revocations are apparently based on a belief that even dedicated public servants like Mr. Rubio are part of a hostile "invasion," rather than ordinary people seeking better lives in a new place. But this misguided belief does

---

[1] *Temporary Protected Status (TPS): Fact Sheet*, Forum Together (January 13, 2026), https://perma.cc/XQR4-NU5U.

not entitle the administration to ignore governing law. Because Secretary Noem admittedly did not follow any of the statutory procedures for terminating a TPS designation, courts repeatedly have found the purported terminations unlawful. Most relevant here, in a case brought by the National TPS Alliance on behalf of Mr. Rubio and other Venezuelan TPS holders, a federal court has already entered a declaratory judgment providing that the Secretary's attempt to terminate TPS for Venezuela was unlawful. This declaration has preclusive effect between the government and Mr. Rubio, and the government cannot simply pretend it doesn't exist. ICE is not above the law.

In its memorandum to this Court, the government tries to wave away the declaratory judgment in two ways. Neither has merit. First, the government suggests—albeit only in passing—that the declaratory judgment is not "coercive." That is true, in the sense that it is a judgment that declares the rights of the parties, rather than an injunction the requires the government to take or refrain from taking certain steps. But that observation misses the point: the declaratory judgment nonetheless has *preclusive* effect, and unless stayed or vacated, it declares the rights of the parties, which includes members of the National TPS Alliance like Mr. Rubio.

Second, the government argues that the declaratory judgment has been stayed by order of the U.S. Supreme Court. That is simply not so. While the Supreme Court stayed a different, earlier order in the same litigation, the government has never sought—let alone obtained—a stay or similar relief in connection with the declaratory judgment issued subsequent to the Supreme Court's stay order. To be sure, the government may have obtained such relief had the government sought it. But the government has not sought a stay, the declaratory judgment remains in effect,

2

and it has preclusive effect here. Thus, the government is bound by the prior declaration that the Secretary's termination of TPS for Venezuela was unlawful, eliminating any legal basis for detaining Mr. Rubio in the first place.

New York City has always been a place of refuge for those fleeing violence, disaster, and persecution. If the federal government wishes to rip such people out of their new lives and revoke acknowledged humanitarian status, the courts should not allow it to cut corners and ignore binding orders in doing so. The City Council asks the Court to grant Mr. Rubio's petition and order his immediate release.

## ARGUMENT

### MR. RUBIO SHOULD BE IMMEDIATELY RELEASED FROM ICE CUSTODY

#### A. Mr. Rubio has Temporary Protected Status allowing him to live and work in the United States.

The Temporary Protected Status (TPS) program "provides humanitarian relief to foreign nationals" from specified countries that are "beset by especially bad or dangerous conditions, such as arise from natural disasters or armed conflicts." *Sanchez v. Mayorkas*, 593 U.S. 409, 412 (2021); *see* 8 U.S.C. § 1254a. "Foreign nationals of that country may apply for immigration status, which, if granted, prevents them from being removed from the U.S. and enables them to obtain authorization to work during the period of designation." *Nat'l TPS All. v. Noem*, 2026 WL 226573, at *1 (9th Cir. Jan. 28, 2026). ICE may not detain or remove TPS holders from the country, regardless of their immigration status. 8 U.S.C. § 1254a(d)(4) ("An alien provided temporary protected status under this section shall not be detained by the Attorney General on the basis of the alien's immigration status in the United States."); *Sanchez*, 593 U.S. at 412 ("That status protects them from removal.").

3

The Secretary of the Department of Homeland Security designated Venezuela for TPS in 2021, observing that health care and basic services had collapsed, there were widespread food shortages, and violence was rampant. 86 Fed. Reg. 13,574 (Mar. 9, 2021). Mr. Rubio, who was already residing here after his original entry on a visitor visa, applied for and was granted TPS. Dkt. No. 16 at 6; Dkt. No. 16-3. In other words, the federal government itself determined that Mr. Rubio should be allowed to live and work here until it was safe for him to return to Venezuela.

The Secretary of Homeland Security extended Venezuela's TPS designation several times, determining that crisis conditions continued to plague the country. 87 Fed. Reg. 55,024 (Sept. 8, 2022); 88 Fed. Reg. 68,130 (Oct. 3, 2023). Accordingly, Mr. Rubio re-registered for TPS and remained authorized to live and work in the United States. Dkt. No. 16-3. On January 17, 2025, the Secretary again extended the 2023 Venezuela Designation through October 2, 2026. 90 Fed. Reg. 5,961. Mr. Rubio immediately re-registered for TPS, and his employment authorization was automatically renewed under the terms of the Secretary's extension notice to October 2, 2026. Dkt. No. 16-4; 90 Fed. Reg. 5,961.

Although the government asserts that Mr. Rubio's employment authorization and TPS status expired in September 2025 (Dkt. No. 22 ("Opp. Mem.") at 3, 9), these statements rely on the incorrect premise that the January 2025 extension was invalid. Clearly, Mr. Rubio re-registered for TPS and reapplied for employment authorization under the January 2025 extension notice, which is all he needed to do to maintain his status. Dkt. No. 16-4. Under the terms of the extension notice, Mr. Rubio's pre-existing employment authorization—which depends on valid TPS status—was automatically extended. 90 Fed. Reg. at 5,967 (noting that "if you already have

4

an [employment authorization document] with a "Card Expires" date of September 10, 2025 … this Federal Register notice automatically extends it through April 2, 2026 without any further action on your part," and moreover that "you may also be eligible for a longer automatic extension of up to 540 days … if you file your Form I–765 [employment authorization document] renewal application during the re-registration period."). This is even stated directly on the receipt Mr. Rubio received. Dkt. No. 16-4 (noting that for applicants under Mr. Rubio's classification, if you "filed your renewal Form I-765 during the TPS re-registration period," "you can show this notice with your expired [employment authorization document] to your employer for employment eligibility verification purposes" for 540 days from the printed expiration date).

Today, Mr. Rubio is employed by City Council, where he works as a Data Analyst and Compliance Associate in the Personnel Services Division. Ex. A.[2] As his colleagues attest, Mr. Rubio is "widely regarded as a trusted and collaborative colleague." Ex. B.[3] He is reliable, responsible, and "goes the extra mile" to help his coworkers. *Id*. Several of his colleagues note that Mr. Rubio is grateful for the opportunity to serve the people of New York City and has taken every opportunity to

---

[2] The exhibits attached to this brief are reference letters that were also submitted at Mr. Rubio's bond hearing. Exhibit A is a Reference Letter of ▮▮▮▮▮▮▮▮▮▮, Director, Personnel Services Division, New York City Council.

[3] Reference Letter of ▮▮▮▮▮▮▮▮▮▮, Deputy Director, Personnel Services Division, New York City Council.

5

grow his skills. Ex. B, Ex. C.[4] His sudden and "deeply jarring" detention has "had a profound impact on staff morale." Ex. B.

Mr. Rubio was arrested at an appointment he was attending as part of the asylum process, through which he hoped to remain lawfully in the United States even after his TPS status eventually expired. Dkt. No. 16 at 6. As the government's papers make clear, the only basis for his arrest and ongoing detention is his alleged immigration status following the purported expiration of his TPS (Opp. Mem. at 1–2). The government does not claim Mr. Rubio has been convicted of any crimes, and it identifies no basis for his removal other than the government's supposed cancellation of Venezuela's TPS designation last year.

As the City has emphasized in several other cases, there is ordinarily no need to detain immigrants who are employed and contributing to their communities while seeking to remain lawfully in the country.[5] A policy of "indiscriminately redetaining noncitizens" creates a climate of fear that prevents immigrants from accessing public services or participate in community life, harming both immigrant and nonimmigrant New Yorkers. *Fontanelli v. Francis*, 2025 LX 430674, at *21 (S.D.N.Y. Sep. 29, 2025).

Moreover, routinely presuming that immigrants should be locked up unless they can prove otherwise presents serious due process concerns. *See Velasco Lopez*

---

[4] Reference Letter of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇, Payroll Manager, Personnel Services Division, New York City Council.

[5] *See* Brief for Amicus Curiae the City of New York, Dkt. No. 32, *Afr. Communities Together v. Lyons*, 799 F. Supp. 3d 362 (S.D.N.Y. 2025) (25-cv-6366); Brief for Amicus Curiae the City of New York, Dkt. No. 49, *E.J.C.C. v. Joyce*, 25-cv-08805 (S.D.N.Y. 2025).

*v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) ("[I]n this country liberty is the norm and detention 'is the carefully limited exception.'" (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987))). Mr. Rubio initially entered this country lawfully on a visitor visa, showing that the government did not regard him as a threat. Dkt. No. 16 at 6.[6] As numerous courts in this District have held, he should at least be entitled to a bond hearing at which the burden is on the government to explain what has changed to justify his detention, rather than on him to prove that he deserves to be free. *See J.C.G. v. Genalo*, 2025 WL 88831, at *7 (S.D.N.Y. Jan. 14, 2025) (collecting cases). Mr. Rubio's recent hearing unfairly flipped this burden.[7]

However, there is an even clearer reason to order Mr. Rubio's release here. Because Mr. Rubio is authorized to legally live and work in the United States, there is no cause for ICE to detain him in the first place.

## B. ICE's detention of Mr. Rubio is unlawful.

Congress has clearly stated that ICE may not detain or remove an individual with TPS status. 8 U.S.C. § 1254a(d)(4); *Sanchez*, 593 U.S. at 412, 416; *Jean-Francois v. Soto*, 2026 WL 241860, at *2 (D.N.J. Jan. 29, 2026) ("The statute is clear: DHS may not detain Petitioner because of his immigration status for the duration of his TPS designation."); *see also Fuentes v. Holder*, 548 F. App'x 736, 737 (2d Cir.

---

[6] For this reason, the Court's recent holding in *Chen v. Almodovar*, 2026 WL 100761 (S.D.N.Y. Jan. 14, 2026) regarding mandatory detention is not at issue here.

[7] *See* Gwynne Hogan, *City Council Staffer Denied Bond, Deemed 'Danger to Society'*, The City (Feb. 2, 2026, 3:17 p.m), https://perma.cc/M6GL-JASK (noting judge's statement that Mr. Rubio "didn't prove to me he's not a danger to society going forward" due to unsubstantiated allegation that Mr. Rubio punched his roommate in 2023, despite extensive evidence of Mr. Rubio's positive character and work ethic). Contrary to the government's inaccurate statement (Opp. Mem. at 4), Mr. Rubio was represented by counsel at his bond hearing.

7

2013) ("TPS affords an eligible non-citizen protection from removal."). Accordingly, Mr. Rubio's TPS status makes his detention unlawful. *See Perez v. Noem*, 2026 WL 206222, at *2 (M.D. Fla. Jan. 27, 2026) ("Arcila Perez has TPS through October 2, 2026, and his detention is unlawful."); *Sanchez Puentes v. Garite*, 780 F. Supp. 3d 682, 698 (W.D. Tex. 2025) (releasing detainee with TPS).

The government relies on Secretary Noem's purported termination of Venezuela's TPS status and vacatur of Venezuela's most recent TPS extension, but this reliance is misplaced. 90 Fed. Reg. 8805 (Feb. 3, 2025); 90 Fed. Reg. 9040 (Feb. 5, 2025). Secretary Noem's actions are part of a wave of TPS terminations apparently premised on the view that immigrants are criminals or otherwise undesirable. *See Nat'l TPS All. v. Noem*, 798 F. Supp. 3d 1008, 1023 (N.D. Cal. 2025) (noting posts by Secretary Noem and DHS associating TPS holders with "MS-13 gang members," "known terrorists," "murderers," and "criminals"); 90 Fed. Reg. at 8807 n.3 (citing Exec. Order, Protecting the American People Against Invasion, sec. 16(b) (Jan. 20, 2025), https://perma.cc/XW2T-RF94). Courts have repeatedly found these terminations to be unlawful because, among other reasons, Secretary Noem admittedly followed none of the statutory procedures for terminating a TPS designation. *See Haitian Evangelical Clergy Ass'n v. Trump*, 789 F. Supp. 3d 255, 273 (E.D.N.Y. 2025) (setting aside termination of TPS for Haiti); *Nat'l TPS All. v. Noem*, 798 F. Supp. 3d 1008, 1035 (N.D. Cal. 2025) (postponing termination of TPS for Nepal, Honduras, and Nicaragua); *Doe v. Noem*, 2026 WL 184544, at *26 (N.D. Ill. Jan. 23, 2026) (postponing termination of TPS for Burma).

Venezuela is no exception. The National TPS Alliance successfully challenged the vacatur and termination of Venezuela's TPS on behalf of its TPS holder members,

and there is currently a declaratory judgment in effect stating that the action is unlawful. *Nat'l TPS Alliance v. Noem*, 2025 WL 3539156, at *3 (N.D. Cal. Dec. 10, 2025). In this habeas proceeding, the government does not even try to argue that the declaratory judgment issued in *National TPS Alliance v. Noem* was wrong on the merits. Nor does the government make any argument to this Court that it properly and lawfully ended Venezuela's TPS designation in accordance with the steps required by 8 U.S.C. § 1254a.[8] And the government does not cite any court decisions upholding its unlawful termination of Venezuela's TPS designation, or any of the other similar terminations (e.g., for Haiti, Honduras, Nepal, and Nicaragua) that multiple courts have found unlawful.

Leaving aside the government's failure to make any merits argument defending the unlawful termination of Venezuela's TPS designation, the government is precluded from relitigating that issue against Mr. Rubio here. Mr. Rubio was a member of the National TPS Alliance at the time of the declaratory judgment. Dkt. No. 16-5.

---

[8] Congress has set out a clear process for the extension or termination of a country's TPS designation. The initial designation lasts between 6 and 18 months, as decided by the Secretary. 8 U.S.C. § 1254a(b)(2). At least 60 days before the end of the designation period, the Secretary must review the conditions in the foreign state and determine if the designation should continue. *Id*. § 1254a(b)(3)(A). If the Attorney General determines through this process that the foreign state no longer meets the conditions for designation, the Attorney General must terminate the designation by filing notice in the Federal Register. *Id*. § 1254a(b)(3)(B). The termination "shall not be effective earlier than 60 days after the date the notice is published or, if later, the expiration of the most recent previous extension," *id*., and "shall only apply to documentation and authorization issued or renewed after the effective date," *id*. § 1254a(d)(3). If the Attorney General fails to terminate a country's designation, the designation is automatically extended for 6 months, or the Attorney General may choose to extend it for 12 or 18 months. *Id*. § 1254a(b)(3)(C). Secretary Noem admittedly followed none of these procedures, relying instead on her "inherent authority." *Nat'l TPS All.*, 2026 WL 226573, at *11. But "an agency cannot claim the inherent authority to reconsider or revoke past actions where Congress has addressed the agency's power to do so in the underlying statute." *Id.* at *12.

The judgment therefore has preclusive effect in this case, the government may not rely on Secretary Noem's purported termination, and Mr. Rubio's TPS status remains valid.

The National TPS Alliance is a membership organization composed largely of TPS holders. Dkt. No. 1 ¶ 14, *Nat'l TPS Alliance v. Noem*, No. 25-cv-01766 (N.D. Cal.). Mr. Rubio has been a member of the TPS Alliance since July 2025. Dkt. No. 16-5. The Alliance challenged Secretary Noem's purported termination of TPS for Venezuela in federal court "on behalf its members," TPS holders who it alleged would suffer "irreparable harm" from the termination of their status. *Id.* ¶ 14 ("NTPSA brings this action on behalf of its members"). Among other things, it alleged that Secretary Noem's sudden termination of Venezuela's TPS status ignored detailed statutory termination procedures which would protect the reliance interests of TPS holders. *Id.* ¶¶ 3, 26–38.

The District Court for the Northern District of California set aside Secretary Noem's action in an order of September 5, 2025, holding that it failed to comply with the governing statute and was arbitrary and capricious. *See Nat'l TPS All. v. Noem*, 798 F. Supp. 3d 1108, 1143 (N.D. Cal. 2025), *aff'd*, 2026 WL 226573 (9th Cir. Jan. 28, 2026). In early October 2025, this order stayed by the Supreme Court pending appeal. *Noem v. Nat'l TPS All.*, 146 S. Ct. 23, 24 (2025).

However, the District Court also issued a separate December 10, 2025 declaratory judgment declaring that the Secretary's purported vacatur and termination of TPS for Venezuela was unlawful. *Nat'l TPS Alliance v. Noem*, 2025 WL 3539156, at *3 (N.D. Cal. Dec. 10, 2025). This judgment remains in effect. Although the government suggests the Supreme Court stay also operated against this judgment (Opp.

10

Mem. at 8–9), its own description of the stay betrays that the stay was limited to the September 5 order, and did not reach the December 10 judgment—which did not even exist at the time (*see id.* ("Specifically, the Supreme Court's October 3 order provided that *the 'September 5 order … is stayed.'*") (emphasis added; alterations changed)).

The government certainly could have sought similar relief from the December 10 declaratory judgment, but it did not do so. Courts have recognized that parties may seek to stay the effect of a declaratory judgment pending appeal. *See Auto-Owners Ins. Co. v. Potter* 242 F. App'x 94, 101 (4th Cir. 2007) ("Federal declaratory judgments have the force and effect of a final judgment—while parties may seek a stay of the judgment pending appeal, no stay was sought in this case."); *In re Mortgages Ltd.*, 771 F.3d 623, 628 (9th Cir. 2014) (discussing motion to stay declaratory judgment); *Cooper v. Town of E. Hampton*, 83 F.3d 31, 36 (2d Cir. 1996) (same). The District Court even stayed its own order for two weeks to give the government an opportunity to seek a stay. *Nat'l TPS Alliance v. Noem*, 2025 WL 3539156, at *3 (granting a temporary stay "to give the Ninth Circuit the opportunity to consider any stay"). But the government never did so, choosing only to notice an appeal. Dkt. No. 362, *Nat'l TPS Alliance v. Noem*, No. 25-cv-01766 (N.D. Cal.); *Nat'l TPS Alliance v. Noem*, No. 26-187 (9th Cir.); *see Coleman v. Tollefson*, 575 U.S. 532, 539 (2015) ("[A] judgment's preclusive effect is generally immediate, notwithstanding any appeal.").

To be sure, if the government had sought a stay of the declaratory judgment, it may well have obtained relief, given the Supreme Court's October order. But it did not seek such a stay, and it has no such stay. This means that the declaratory

11

judgment remains in full force. This Court therefore can—indeed, must—give effect to the December 10 declaratory judgment, and respondents may not collaterally attack it here with arguments that should have been made in the Ninth Circuit.

This declaratory judgment precludes the government from relying on the purported termination of TPS for Venezuela as justification for Mr. Rubio's detention. Standard preclusion principles forbid relitigation of "an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine,* 532 U.S. 742, 748–49 (2001). It is clear that the lawfulness of Secretary Noem's action was fully litigated and decided in the prior action, as it was the central issue in the case. *Nat'l TPS All.*, 798 F. Supp. 3d at 1143–53.

When asserted against the government, preclusion also requires mutuality—that the parties to the second action are the same or in privity with the parties to the first action. *United States v. Mendoza*, 464 U.S. 154, 162–64 (1984); *see Mutuality Doctrine,* Black's Law Dictionary (12th ed. 2024). Mutuality is present here due to the fact the TPS Alliance brought the prior action as a representative of its members, including Mr. Rubio, and both actions are against the federal government and its authorized representatives. *See Sunshine Coal Co. v. Adkins*, 310 U.S. 381, 402–03 (1940) ("[A] suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government."); *O'Connor v. Pierson*, 568 F.3d 64, 71 (2d Cir. 2009). The declaratory judgment in that action therefore "inure[s] to the benefit of [the Alliance's] members," and Mr. Rubio is entitled to invoke it here. *Hunt*, 432 U.S. at 343 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972)).

12

Allowing preclusion in this situation gives effect to the purposes of a declaratory judgment, which is intended to "establish a binding adjudication that enables the parties to enjoy the benefits of reliance and repose secured by res judicata." *Haaland v. Brackeen*, 599 U.S. 255, 293 (2023) (internal quotation marks and citation omitted). Because Mr. Rubio was a member of the Alliance at the time the declaratory judgment was issued, it declared *his* rights and he is entitled to the "reliance and repose" such a declaration provides. *Haaland*, 599 U.S. at 293. Although the government notes that a declaratory judgment does not have coercive effect (Opp. Mem. at 2), the entire point of a declaratory judgment is that it has *preclusive* effect, settling the rights of the parties. *Haaland*, 599 U.S. at 293; *see Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 200 (2014) (noting that without preclusion a declaratory judgment would "fail[] to achieve its object: to provide an immediate and definitive determination of the legal rights of the parties" (citation omitted)).

In any proceeding between DHS and an Alliance member, the declaratory judgment is preclusive of the crucial issue—whether Venezuela's TPS designation was lawfully revoked. So in adjudicating Mr. Rubio's petition, the Court must start from the premise that Secretary Noem's actions were unlawful. Accordingly, Mr. Rubio retains his TPS status, and there is no basis for his detention. *See Perez*, 2026 WL 206222, at *2 (releasing habeas petitioner based on the preclusive effect of the December 10 judgment in *National TPS Alliance*); *Gonzalez v. Noem*, No. 5:26-cv-00357 (C.D. Cal. February 5, 2026) (same).

In sum, this case demonstrates the error of the government's "detain first, ask questions later" policy. Though the detention of longtime community members who

13

are attending scheduled appointments is unnecessary in any case, it is especially unjustifiable when it is incompatible with a binding court order. Until and unless Mr. Rubio's TPS status is lawfully terminated, he must be free to live and work in his community.

## CONCLUSION

This Court should grant the petition.

Dated:   New York, New York
         February 6, 2026

>                    Respectfully submitted,
>
>                    MURIEL GOODE-TRUFANT
>                    *Corporation Counsel*
>                    *of the City of New York*
>                    Attorney for Amicus Curiae
>
>
>               By:  /s/ *Jamison Davies*
>                    JAMISON DAVIES
>                    Assistant Corporation Counsel
>
>                    100 Church Street
>                    New York, NY 10007
>                    212-356-2490
>                    jdavies@law.nyc.gov

RICHARD DEARING
DEVIN SLACK
BO MALIN-MAYOR
JAMISON DAVIES
   *of Counsel*