UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X
               :

RAFAEL ANDRES RUBIO BOHORQUEZ,   :

               :

         Petitioner,     :

               :

      -v-         :        26 Civ. 264 (JPC)

               :

LADEON FRANCIS, *et al.*,       :        OPINION AND ORDER

               :

         Respondents.   :

               :

-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Rafael Andres Rubio Bohorquez ("Rubio"), a native and citizen of Venezuela, initiated this action by filing a petition for a writ of habeas corpus (the "Petition") challenging his detention in immigration custody. Rubio was previously granted Temporary Protected Status ("TPS"), which protects aliens from "designated" countries from detention and removal. According to Respondents, however, Rubio's TPS was lawfully withdrawn after the Secretary of the Department of Homeland Security ("DHS") terminated the TPS designation for Venezuela. For reasons explained below, the Court concludes that Rubio has not shown he is entitled to relief, and therefore his Petition is denied.

## I. Background

**A.    Legal Context**

**1.    Background on TPS**

TPS is a humanitarian program first created by the Immigration Act of 1990.  *See* Pub. L. 101-649, 104 Stat. 4978 (Nov. 29, 1990).  It allows the DHS Secretary,[1] "after consultation with appropriate agencies of the Government, [to] designate a foreign state."  8 U.S.C. § 1254a(b)(1).  Then, after a country has been designated, certain aliens from that country may apply for protection from immigration-related detention and removal.  *Id.* § 1254a(a), (c), (d)(4).

When a country is designated, that initial designation lasts for a "period, specified by the [DHS Secretary], of not less than 6 months and not more than 18 months."  *Id.* § 1254a(b)(2).  Before that period lapses, the designation must be reassessed.  *Id.* § 1254a(b)(3)(A).  If the DHS Secretary determines, at least sixty days prior to when the designation is set to expire, that the designation is no longer warranted, then the designation shall be terminated.  *Id.* § 1254a(b)(3)(A), (b)(3)(B).  But should the DHS Secretary decide not to terminate a country's designation at least sixty days prior to its expiration, then that designation "is extended for an additional period of 6 months (or, in the discretion of the [DHS Secretary], a period of 12 or 18 months)."  *Id.* § 1254a(b)(3)(C).

During the period in which a country has been designated, an alien from that country may receive TPS if he satisfies several threshold eligibility requirements.  These requirements include that the alien has "been continuously physically present in the United States since the effective date of the most recent designation of that [foreign] state," *id.* § 1254a(c)(1)(A)(i), is "admissible

---

[1] Although the statutory provisions and regulations cited herein refer to the Attorney General, the Attorney General's TPS authority has since been transferred to the DHS Secretary. *See Rodas v. Chertoff*, 399 F. Supp. 2d 697, 704 (E.D. Va. 2005); Pub. L. 107-296, 116 Stat. 2135 (Nov. 25, 2002).

2

as an immigrant," *id.* § 1254a(c)(1)(A)(iii), and has not "been convicted of any felony or 2 or more misdemeanors committed in the United States," *id.* § 1254a(c)(2)(B). If these and other eligibility requirements are satisfied, and the alien complies with the prescribed procedure for submitting a TPS application, *see* 8 C.F.R. §§ 244.6, 244.7, then United States Citizenship and Immigration Services ("USCIS") "may grant the alien [TPS] in the United States," 8 U.S.C. § 1254a(a)(1)(A); *see also* 8 C.F.R. § 244.10(b) ("Upon review of the evidence presented, USCIS may approve or deny the application for [TPS] in the exercise of discretion, consistent with the standards for eligibility.").

In the event that TPS is granted, "[t]he decision to grant [TPS] shall be evidenced by the issuance of an alien registration document." 8 C.F.R. § 244.10(f)(1). The alien will also "be provided with a notice," *id.* § 244.10(f)(2), which, *inter alia*, lists the various benefits of TPS and advises the alien that he must "remain eligible for [TPS]" and "register annually with the district office or service center having jurisdiction over the alien's place of residence," *id.* § 244.10(f)(4)(i), (ii).

Two benefits of TPS are particularly important in this case. First, the DHS Secretary "shall not remove the alien from the United States during the period in which such status is in effect." 8 U.S.C. § 1254a(a)(1)(A). Second, "[a]n alien provided [TPS] . . . shall not be detained by the [DHS Secretary] on the basis of the alien's immigration status in the United States." *Id.* § 1254a(d)(4).

Once TPS is granted, it may be withdrawn for any of four reasons. First, TPS may be withdrawn if USCIS determines that "[t]he alien was not in fact eligible at the time such status was granted, or at any time thereafter becomes ineligible for such status." 8 C.F.R. § 244.14(a)(1). Second, TPS may be withdrawn if "[t]he alien has not remained continuously physically present in the United States from the date the alien was first granted [TPS]." *Id.* § 244.14(a)(2). Third,

TPS may be withdrawn if "[t]he alien fails without good cause to register with DHS annually within thirty (30) days before the end of each 12-month period after the granting of [TPS]." *Id.* § 244.14(a)(3).

Fourth and finally, TPS may be withdrawn when the designation of the TPS recipient's country of origin is terminated.   DHS regulations provide that "[u]pon the termination of designation of a foreign state," aliens from that state automatically lose their TPS on "the sixtieth (60th) day after the date notice of termination is published in the Federal Register, or on the last day of the most recent extension of designation by the [DHS Secretary]." *Id.* § 244.19.  This provision is limited, however, in that any termination of a foreign state's designation "shall only apply to documentation and authorization issued or renewed after the effective date of the publication of notice of the determination."  8 U.S.C. § 1254a(d)(3).  Thus, if an alien's TPS is renewed by documentation issued before his country's designation is terminated, then it is possible for that alien to retain TPS even after such termination becomes effective.

2.      **Venezuela's TPS Designation and Termination**

On March 9, 2021, Alejandro Mayorkas, who then was the Secretary of DHS, designated Venezuela for TPS.  86 Fed. Reg. 13574 (Mar. 9, 2021).  Three times thereafter, former-Secretary Mayorkas published a notice in the Federal Register to announce that he was extending Venezuela's designation.  On September 8, 2022, former-Secretary Mayorkas announced that he was extending Venezuela's TPS designation through March 10, 2024.  87 Fed. Reg. 55024 (Sept. 8, 2022).  On October 3, 2023, former-Secretary Mayorkas announced that he was extending Venezuela's TPS designation through September 10, 2025.  88 Fed. Reg. 68130 (Oct. 3, 2023).[2]

---

[2] Former-Secretary Mayorkas's October 2023 announcement also "redesignated" Venezuela, which allowed aliens from Venezuela who arrived in the United States after the initial designation in March 2021 to apply for TPS. *See* 88 Fed. Reg. at 68134.

And on January 17, 2025, former-Secretary Mayorkas announced that he was extending Venezuela's TPS designation through October 2, 2026.  90 Fed. Reg. 5961 (Jan. 17, 2025).

President Donald J. Trump took office on January 20, 2025, and his administration saw things differently.  On February 3, 2025, Kristi Noem, who had been confirmed as the new DHS Secretary about a week earlier, published a notice in the Federal Register announcing that she was vacating former-Secretary Mayorkas's January 2025 decision regarding Venezuela's TPS designation.  90 Fed. Reg. 8805 (Feb. 3, 2025).  Two days later, former-Secretary Noem published another notice in the Federal Register, this time announcing that she was terminating Venezuela's TPS designation.  90 Fed. Reg. 9040 (Feb. 5, 2025).  According to her announcement, the termination of Venezuela's designation would be effective September 10, 2025, which is the same date that Venezuela's TPS designation was set to expire under former-Secretary Mayorkas's October 2023 notice regarding Venezuela's TPS designation.  *Id.* at 9041, 9044.

### 3.    *National TPS Alliance v. Noem*

On February 19, 2025, several individual TPS holders and the National TPS Alliance, a nation-wide organization of TPS holders, filed a Complaint in the Northern District of California challenging former-Secretary Noem's vacatur and termination decisions regarding Venezuela's TPS designation.  *Nat'l TPS All. v. Noem*, No. 25 Civ. 1766 (EMC) (N.D. Cal. 2025), Dkt. 1.  A month and a half later, on March 31, 2025, the Honorable Edward M. Chen granted the plaintiffs' motion pursuant to the Administrative Procedure Act ("APA"), *see* 5 U.S.C. § 705, to postpone the effective date of the vacatur and termination decisions pending final adjudication of the case. *Nat'l TPS All. v. Noem*, 773 F. Supp. 3d 807, 868 (N.D. Cal. 2025).

The Supreme Court stayed Judge Chen's March 31 order on May 19, 2025.  *Noem v. Nat'l TPS All.*, 145 S. Ct. 2728 (2025).  But that stay was "without prejudice to any challenge to Secretary Noem's February 3, 2025 vacatur notice insofar as it purports to invalidate . . . Forms

I-797, Notices of Action, and [other documentation] issued with October 2, 2026 expiration dates." *Id.* at 2729 (citing 8 U.S.C. § 1254a(d)(3)).  In light of this limitation, on May 30, 2025, Judge Chen "order[ed] that, to preserve the status and rights of those TPS holders . . . who received EADs, Forms I-797, Notices of Action, and Forms I-94 issued with October 2, 2026 expiration dates pursuant to the January 17, 2025, extension of TPS for Venezuela, as referenced in the Supreme Court's order on May 19, 2025[,] the effective date of the portion of the Secretary's vacatur decision purporting to invalidate those documents is postponed pending resolution of this case on the merits." *Nat'l TPS All. v. Noem*, No. 25 Civ. 1766 (EMC), 2025 WL 1547628, at *7 (N.D. Cal. May 30, 2025).  The Government did not appeal, or seek a stay of, Judge Chen's May 30 order preserving the status of this subset of TPS holders.

A few months later, on September 5, 2025, Judge Chen granted summary judgment on the plaintiffs' claim under the APA to set aside, *see* 5 U.S.C. § 706(2), former-Secretary Noem's vacatur and termination decisions.  *Nat'l TPS All. v. Noem*, 798 F. Supp. 3d 1108, 1164 (N.D. Cal. 2025).  But then, on October 3, 2025, the Supreme Court once again intervened, staying Judge Chen's order setting aside the vacatur and termination decisions.  *Noem v. Nat'l TPS All.*, 146 S. Ct. 23 (2025).  The Supreme Court explained that "[a]lthough the posture of the case has changed, . . . [t]he same result that we reached in May is appropriate here." *Id.* at 24.  The Supreme Court therefore ruled that "[t]he September 5, 2025 order entered by [Judge Chen] is stayed as to the Venezuela vacatur and Venezuela termination, pending the disposition of the Government's appeal in the United States Court of Appeals for the Ninth Circuit and disposition of a petition for a writ of *certiorari*, if such writ is timely sought." *Id.*

Despite the Supreme Court's stay, a Ninth Circuit panel affirmed Judge Chen's September 5, 2025 decision on January 28, 2026.  *Nat'l TPS All. v. Noem*, 166 F.4th 739, 748-49 (9th Cir. 2026).  On March 11, 2026, the Ninth Circuit then denied rehearing *en banc* in a closely divided

vote, with nine Judges dissenting, *see Nat'l TPS All. v. Noem*, No. 25-5724, 2026 WL 687355, at *4-10 (9th Cir. Mar. 11, 2026) (Bumatay, J., dissenting from denial of rehearing *en banc*). The Government's time to petition for a writ of *certiorari* from the Ninth Circuit's January 28 decision has not yet lapsed. *See* U.S. Sup. Ct. R. 13(1) ("[A] petition for a writ of *certiorari* to review a judgment in any case . . . is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment.").

While these challenges to Judge Chen's September 5 order were playing out, Judge Chen issued yet another ruling on December 10, 2025. *Nat'l TPS All. v. Noem*, No. 25 Civ. 1766 (EMC), 2025 WL 3539156 (N.D. Cal. Dec. 10, 2025). In that ruling, Judge Chen granted the plaintiffs' motion for a declaratory judgment that "(1) [former-Secretary Noem's] vacatur of the January 17, 2025, TPS extension for Venezuela was unlawful as was (2) the termination of Venezuela's 2023 TPS designation on February 5, 2025." *Id.* at *3. Judge Chen explained that he "reject[ed] the government's contention that the Supreme Court's [October 3] order staying the [grant of summary] judgment preclude[d] the issuance of declaratory relief." *Id.* The Government appealed Judge Chen's December 10 order but did not seek a stay, and the Ninth Circuit has not yet ruled on the appeal. *See Nat'l TPS All. v. Noem*, No. 26-187 (9th Cir. 2026).

**B.    Factual and Procedural History**

Rubio, a native and citizen of Venezuela, was admitted to the United States on a series of non-immigrant visas issued between October 24, 2012 and April 26, 2017, but failed to depart the country after the latest of his immigrant visas expired on October 22, 2017. Dkt. 21 ("Petito Decl.") ¶¶ 3-10. Then, after remaining unlawfully in the United States for almost three-and-one-half years, Rubio applied for TPS on March 25, 2021. *Id.* ¶ 11. His application was approved, and he was granted TPS from September 15, 2021 to September 9, 2022. *Id.*; *see also* Dkt. 16 ("Petition"), Exh. C at 1 (Form I-797A Notice of Action dated September 15, 2021).

On September 10, 2022, Rubio filed for TPS re-registration in accordance with DHS regulations, and on August 8, 2023, he received notice that his TPS was extended to March 10, 2024. Petito Decl. ¶ 12; Petition, Exh. C at 2 (Form I-797A Notice of Action dated August 8, 2023). On January 10, 2024, Rubio filed a second time for TPS re-registration, and on March 14, 2024, he received notice that his TPS was extended to September 10, 2025. Petito Decl. ¶ 14; Petition, Exh. C at 3 (Form I-797A Notice of Action dated March 14, 2024).

On January 17, 2025, the same day that former-Secretary Mayorkas announced that he was extending Venezuela's TPS designation, Rubio filed a third time for TPS re-registration. *See* Petito Decl. ¶ 15. But unlike the previous two times he had filed for TPS re-registration, Rubio did not receive a Form I-797A notifying him that his TPS was being extended. *Cf.* Petition, Exh. C at 2-3 (informing Rubio that he had "been granted [TPS] under Section 244 of the Immigration and Nationality Act [('INA')]" and providing dates upon which such TPS extensions would expire). Instead, Rubio received only a Form I-797C from USCIS thanking him "for submitting [his] application, petition, or request" and informing him that USCIS "is currently processing it." Petition, Exh. D at 1 (Form I-797C Notice of Action dated January 17, 2025). A banner at the top of that Form I-797C made clear—in bold and all-capitalized letters—that "this notice does not grant any immigration status or benefit." *Id.* For this reason, while the "Notice Type" of the Form I-797As that Rubio had previously received was an "Approval Notice," Petition, Exh. C at 2-3, the "Notice Type" of Rubio's January 2025 Form I-797C was only a "Receipt Notice," Petition, Exh. D at 1.

On November 20, 2025, just over two months after the termination of Venezuela's TPS designation went into effect, Rubio's TPS was withdrawn. Petito Decl. ¶ 15.[3] Shortly thereafter,

---

[3] It is not clear why Rubio's TPS was not immediately withdrawn on September 10, 2025, which was both the date Rubio's TPS was set to expire based on the Form I-797A Rubio received

on November 25, 2025, Rubio filed with USCIS an affirmative application for relief from removal. *Id.* ¶ 16. Less than two months later, on January 12, 2026, Rubio was arrested pursuant to 8 U.S.C. § 1226(a) by a Homeland Security Investigations Officer in Bethpage, New York. *Id.* ¶ 17; *see also* Dkt. 20, Exh. C (notice of custody determination indicating that Rubio is detained "[p]ursuant to the authority contained in section [1226]"); Dkt. 22 at 2 (Government opposition brief arguing that Rubio "is permissibly detained pursuant to 8 U.S.C. § 1226(a)").

After he was arrested in Bethpage, New York, Rubio was transported to an Immigration and Customs Enforcement ("ICE") processing facility in East Meadow, New York, where he arrived at approximately 1:00 p.m. on January 12, 2026. Petito Decl. ¶¶ 17-18. At approximately 3:35 p.m. that same day, Rubio was transported from the East Meadow processing facility to the Orange County Correctional Facility in Goshen, New York, where he arrived roughly four hours later, at approximately 7:45 p.m. *Id.* ¶ 21. Then, at 9:07 p.m. on January 12, 2026, Rubio initiated this action in the Southern District of New York by filing a petition for a writ of habeas corpus against Respondents LaDeon Francis, the Acting Field Office Director of the New York Field Office for ICE; Todd M. Lyons, the Acting Director of ICE; former-Secretary Noem; Pamela Bondi, the United States Attorney General; DHS; and the Executive Office for Immigration Review (collectively "Respondents"). Dkt. 1.[4] The following day, the Court set an expedited

---

on March 14, 2024, *see* Petition, Exh. C at 3, and the date that Venezuela's TPS designation terminated under former-Secretary Noem's vacatur and termination decisions, *see* 90 Fed. Reg. at 9042; 8 C.F.R § 244.19 (explaining that "[u]pon the termination of designation of a foreign state," aliens from that state automatically lose their TPS on "the sixtieth (60th) day after the date notice of termination is published in the Federal Register, or on the last day of the most recent extension of designation by the [DHS Secretary]").

[4] Although the Government does not raise the issue, it does not appear that Rubio's Petition names his "immediate custodian." *See* 28 U.S.C. § 2243 ("The writ . . . shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004) ("[T]here is generally only one proper respondent to a given prisoner's habeas petition," which "is 'the person' with the ability to produce the prisoner's body before the habeas court."). Rubio was detained in the Orange County Correctional Facility when his Petition was filed, so while the

briefing schedule on the Petition, and scheduled a hearing for January 16, 2026. Dkt. 6. The parties jointly requested an extension of that briefing schedule and an adjournment of the hearing, Dkt. 8, which the Court granted, Dkt. 9. Then, on January 22, 2026, Rubio filed an Amended Petition against Respondents. Dkt. 16.

On February 3, 2026, Rubio was transferred from the Orange County Correctional Facility to the Metropolitan Detention Center in Brooklyn, where he remains in custody today. Petito Decl. ¶¶ 22-23.[5] Respondents responded to the Petition on February 4 and February 5, 2026. Dkts. 20-22. Rubio submitted a reply in support of the Petition on February 5, 2026. Dkt. 24.

On February 12, 2026, the Court ordered the parties to appear at a hearing on February 20, 2026. Dkt. 32; *see also* Dkt. 35 (directing the parties to prepare to discuss various topics at the February 20 hearing). On February 18, 2026, Respondents requested an adjournment of the hearing, Dkt. 36, which the Court granted, rescheduling the hearing for February 26, 2026, Dkt. 39. Also on February 18, 2026, the Court ordered each party to submit by February 23, 2026, a letter addressing "(1) whether [Rubio's TPS] has been confirmed or withdrawn in 2025 or 2026, including if any documentation reflects that status, and (2) whether there is evidence showing that

---

Southern District of New York is the District of his confinement, his immediate custodian was likely Paul Arteta, the warden of the Orange County Correctional Facility, whom Rubio did not name as a Respondent in his Petition. *Cf. Flores Palma v. Arteta*, No. 25 Civ. 9340 (JPC), 2026 WL 697015, at *2 (S.D.N.Y. Mar. 12, 2026) (resolving a habeas petition that named Paul Arteta as the petitioner's immediate custodian). The Court need not reach this issue, however, because unlike the requirement that a habeas petition be filed in the district of confinement, *see* 28 U.S.C. § 2241(a) ("Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions."), there is no indication that the immediate-custodian rule is jurisdictional. *See Boechler, P.C. v. Comm'r of Internal Revenue*, 596 U.S. 199, 203 (2022) ("[W]e treat a procedural requirement as jurisdictional only if Congress clearly states that it is." (internal quotation marks omitted)); *Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 495 (1973) ("Read literally, the language of § 2241(a) requires nothing more than that the court issuing the writ have jurisdiction over the custodian.").

[5] Rubio's transfer to Brooklyn did not deprive the Court of jurisdiction. "[W]hen the Government moves a habeas petitioner after she properly files a petition . . . , the District Court retains jurisdiction." *Padilla*, 542 U.S. at 441.

any withdrawal or expiration of [Rubio's] TPS was due solely to [the termination of] Venezuela's designation, as opposed to other factors." *Id.* Rubio and Respondents submitted such letters on February 19, 2026 and February 23, 2026, respectively, Dkts. 41 ("Rubio Letter"), 43, and appeared before the Court at the hearing on February 26. After the hearing, and without leave of Court, Rubio submitted an additional letter on March 2, 2026. Dkt. 46 ("Rubio Suppl. Letter").

## II. Legal Standard

Under 28 U.S.C. § 2241, a district court may grant a writ of habeas corpus to any person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Such a petitioner has "the burden of sustaining his allegations by a preponderance of evidence." *Walker v. Johnston,* 312 U.S. 275, 286 (1941). If he makes an allegation of unlawful detention, "and if a dispute as to the facts appears either on the face of the petition and supporting papers or from the facts alleged in the [Government's response]," a district court must "determine whether a hearing is necessary" to resolve the dispute. *U.S. ex rel. Holes v. Mancusi*, 423 F.2d 1137, 1141 (2d Cir. 1970). But where, as here, "the record and submissions are adequate to resolve Petitioner's claim," "there is no need for a full evidentiary hearing." *Kaplan v. United States*, No. 14 Civ. 1440 (RMB), 2015 WL 4111246, at *3 (S.D.N.Y. June 25, 2015); *see also Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001) (discussing a "district court's discretion to choose a middle road that avoided . . . a full testimonial hearing").

## III. Discussion

Rubio makes two arguments in support of the Petition. First, as a factual matter, Rubio contends that his TPS has not been withdrawn, and that therefore he cannot be detained. Second, as a legal matter, Rubio argues that if his TPS was withdrawn, such withdrawal was improper. The Court considers each of these arguments in turn.

A.    **Withdrawal of Rubio's TPS**

Although Respondents have submitted a sworn declaration stating that Rubio's TPS was withdrawn on November 20, 2025, Petito Decl. ¶ 15, Rubio insists that is not the case.  To prove he still has TPS, Rubio relies solely on a single webpage on USCIS's website.  *See* Rubio Letter, Exh. 4 ("USCIS Webpage").  An "Alert" at the top of that webpage advises that "TPS beneficiaries who received TPS-related employment authorization documents (EADs), Forms I-797, Notices of Action, and Forms I-94 issued with October 2, 2026, expiration dates on or before February 5, 2025 will maintain work authorization and their documentation will remain valid until October 2, 2026, pursuant to the U.S. District Court for the Northern District of California's order dated May 30, 2025."  USCIS Webpage at 1 (emphasis in original).  Further down the same webpage, a chart states that "If you re-registered under the previously vacated Jan. 17, 2025 Extension of the 2023 Designation of Venezuela and you received TPS-related employment authorization documents (EADs), Forms I-797, Notices of Action, and Forms I-94 issued with October 2, 2026, expiration dates on or before February 5, 2025," "[t]hen you: [w]ill maintain TPS and work authorization and your documentation will remain valid through Oct. 2, 2026."  *Id.* at 2.

Based on the information on this webpage, Rubio argues that when he received a Form I-797C Notice of Action from USCIS on January 17, 2026, thanking him "for submitting [his] application, petition, or request," Petition, Exh. D at 1, his TPS was automatically extended until October 2026.  *See* Oral Arg. Tr. at 13:3-4 ("As long as you receive the notice that you re-register, then you are protected.").  As such, Rubio says that he may not be detained.  *See* 8 U.S.C. § 1254a(d)(4) ("An alien provided [TPS] . . . shall not be detained by the [DHS Secretary] on the basis of the alien's immigration status in the United States.").

Rubio's reliance on the USCIS webpage is unpersuasive for a couple of reasons.  First, Rubio appears to misread the website.  The USCIS webpage says only that the TPS of those re-

registrants who received documentation "with *October 2, 2026, expiration dates*" will remain valid.  USCIS Webpage at 2 ("If you . . . received [documentation] issued *with October 2, 2026, expiration dates* . . . [t]hen you: [w]ill maintain TPS . . . through Oct. 2, 2026." (emphasis added)).  This distinction is consistent with Judge Chen's May 30, 2025 order in *National TPS Alliance v. Noem*, which the "Alert" on the USCIS webpage is "pursuant to."  *Id.* at 1.  That decision preserved "the status and rights of those TPS holders . . . who received . . . Forms I-797, Notices of Action, and [other documentation] issued *with October 2, 2026 expiration dates* pursuant to [former-Secretary Mayorkas's] January 17, 2025, extension of TPS for Venezuela."  *Nat'l TPS All.*, 2025 WL 1547628, at *7 (emphasis added).  Rubio, however, has not come forward with any documentation reflecting an October 2, 2026 expiration date.  As discussed above, *see supra* I.B, unlike the Form I-797As that Rubio received in 2023 and 2024 when he was given notice that his TPS was extended, *see* Petition, Exh. C at 2-3, Rubio's January 2025 Form I-797C did not state that Rubio "ha[d] been granted" TPS and did not provide when such TPS would expire, *see* Petition, Exh. D at 1.  That is because the Form I-797C was only a "Receipt Notice" confirming USCIS's receipt of Rubio's "application, petition, or request," and therefore did "not grant any immigration status or benefit."  *Id.*

The distinction between documentation with an October 2026 extension date and documentation without such an extension date is significant.  Judge Chen preserved the status of TPS beneficiaries who had received October 2026 expiration dates because 8 U.S.C. § 1254a(d)(3) provides that any termination of a foreign state's designation "shall only apply to documentation and authorization issued or renewed *after* the effective date of the publication of notice of the determination."  *Nat'l TPS All.*, 2025 WL 1547628, at *3 (emphasis in original) *(*quoting 8 U.S.C. § 1254a(d)(3)).  In light of that provision, Judge Chen reasoned that former-Secretary Noem's February 5, 2025 termination of Venezuela's TPS designation did not affect those TPS

beneficiaries who were issued documentation extending their TPS before February 5, 2025. *Id.* Rubio, however, has presented no evidence that he is such a TPS beneficiary. His January 17 Form I-797C indicated only that USCIS was "processing" his application. Petition, Exh. D at 1.

At the February 26 hearing, Rubio insisted that as long as his TPS application was "pending" with USCIS before February 5, 2025, his TPS was automatically extended. *See* Oral Arg. Tr. at 20:19-22 ("[T]he word 'receipt' means that USCIS obtained the application, but it doesn't say 'granted.' It says: Receipt notice dated before January 6, 2025, that automatically extends the validity."). But nothing in the USCIS webpage, Judge Chen's May 30, 2025 ruling, DHS regulations, or the text of the INA supports this assertion. To the contrary, when a TPS beneficiary has not had his TPS extended based on documentation issued prior to the termination of his country's designation, DHS regulations provide that, regardless of whether such alien has a "pending" application, his TPS is automatically withdrawn "upon the sixtieth (60th) day after the date notice of termination is published in the Federal Register, or on the last day of the most recent extension of designation by the [DHS Secretary]." 8 C.F.R. § 244.19. For Rubio, that would mean his TPS was automatically withdrawn on September 10, 2025. *See supra* n.3.

Second, even assuming that Rubio's reading of the webpage is correct, USCIS may have withdrawn Rubio's TPS notwithstanding the information on its website. Although an agency must follow its own "[r]egulations [that have] the force and effect of law," *U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265 (1954) (internal footnotes omitted), Rubio provides no support for the proposition that agencies are required to adhere to every piece of information they disseminate. *See* Thomas W. Merrill, *The* Accardi *Principle*, 74 GEO. WASH. L. REV. 569, 585-87 (2006) (emphasizing "the distinction between legislative rules and nonlegislative policy statements"). When pressed on this issue at the February 26 hearing, Rubio's counsel offered only that USCIS's webpage should have legal effect "[b]ecause it comes from the government." Oral

14

Arg. Tr. at 22:20.  This is hardly a persuasive argument.  *Cf. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument', really nothing more than an assertion, does not preserve a claim.").

The Court therefore concludes that, as a factual matter, Rubio's TPS has been withdrawn.

**B.    Legality of Rubio's TPS Withdrawal**

In addition to arguing that his TPS has not been withdrawn, Rubio also contends that any withdrawal of his TPS would have been unlawful.[6]  It is difficult, however, to pin down the basis of Rubio's argument to this effect.

In his Petition, Rubio contends that the withdrawal of his TPS was unlawful for only one reason: because Judge Chen's December 10, 2025 declaratory judgment in *National TPS Alliance v. Noem* "has preclusive effect in [this] habeas case."  Petition ¶ 2.  As described above, Judge Chen's December 10 ruling declared that former-Secretary Noem's vacatur and termination decisions regarding Venezuela's TPS designation were unlawful.  *See Nat'l TPS All.*, 2025 WL 3539156, at *3.  Rubio is a member of the National TPS Alliance, Petition ¶ 21, which was a plaintiff in the action before Judge Chen.  Rubio therefore argues that, in light of Judge Chen's December 10 ruling, Respondents are precluded from denying that former-Secretary Noem's vacatur and termination decisions were unlawful.  *Id.* ¶¶ 33-36.

---

[6] The Court notes that under 8 U.S.C. § 1254a(a)(1)(A), USCIS "may" grant TPS to an eligible alien from a designated country, which is significant because the INA "bar[s] court review of discretionary decisions [where] Congress itself set out the [Executive's] discretionary authority in the statute." *Kucana v. Holder*, 558 U.S. 233, 247 (2010); *see* 8 U.S.C. § 1252(a)(2)(B) ("[N]o court shall have jurisdiction to review . . . [a] decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security."); *see also Zadvydas v. Davis*, 533 U.S. 678, 697 (2001) ("'[M]ay' suggests discretion.").  Here, however, Respondents have represented that Rubio's TPS was withdrawn due to the termination of Venezuela's designation, so no discretion was exercised in withdrawing Rubio's TPS. *See* Oral Arg. Tr. at 27:20-22 ("I can affirmatively state that [Rubio's] termination was affirmatively based on the withdrawal of his country designation.").

The Court has repeatedly attempted to clarify with Rubio's counsel whether this is his only argument for why the termination of Rubio's TPS was unlawful. On February 17, 2026, the Court directed Rubio's counsel to be prepared to discuss whether his argument was solely based on preclusion, or if he was independently arguing that "the Department of Homeland Security acted unlawfully in vacating its January 2025 TPS decision regarding Venezuela." Dkt. 35 at 2 (citation omitted). Then, at the hearing on February 26, the Court asked Rubio's counsel directly: "[J]ust to be clear, again, your argument today is based solely on the impact of the decision in the Northern District of California on the case here? You're not making any other arguments? Is that right?" Oral Arg. Tr. at 22:23-23:1. Rubio's counsel was unequivocal: "That is correct, Judge." *Id.* at 23:2; *see also id.* at 10:3-9 ("Let me just stop you and just confirm[.] . . . Your argument is that the Northern District of California granted declaratory [relief] and that has [p]reclusive effect on me? That is your argument for why Mr. Rubio should be released? . . . Yes, Judge.").

Four days after the hearing, however, Rubio submitted a letter without leave of court. *See* Rubio Suppl. Letter. In that letter, Rubio stated for the first time that his "submission is not that [Judge Chen's] December 10 Order 'binds SDNY as precedent,' but that it informs whether DHS has lawfully terminated TPS protections for [Rubio's] cohort." *Id.* at 2. *But see* Petition ¶ 2 ("The December 10 Order in [*National TPS Alliance v. Noem*] has preclusive effect in Petitioner's habeas case, controlling the legal question of whether members of the National TPS Alliance[], such as Petitioner, retain TPS."). It is not exactly clear how Rubio thinks Judge Chen's ruling should "inform" this Court's decision. Judge Chen relied on several reasons for his rulings in *National TPS Alliance v. Noem*, but Rubio has not made any of those arguments here.

The Court will not consider issues regarding the legality of the vacatur and termination

decisions that were not raised in the Petition or the reply brief in support of the Petition.[7] "Caselaw in this Circuit confirms that a court need not consider new claims raised in supplemental letters filed without leave of the Court." *Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*, 337 F. Supp. 3d 274, 288 (S.D.N.Y. 2018) (collecting cases).  And consideration of new issues is especially inappropriate where, as here, a party has consistently taken one position (that his argument is based solely on the preclusive effect of Judge Chen's rulings) before suddenly taking a new position (that such rulings should "inform" the Court) in his last filing.  *Cf. In re Harris*, 464 F.3d 263, 268 n.3 (2d Cir. 2006) (Sotomayor, J.) (explaining that courts "generally do not consider issues raised in a reply brief for the first time" because the other party "may not have an adequate opportunity to respond" (internal quotation marks omitted)).

Rubio's supplemental letter also fails to explain which aspects of Judge Chen's rulings should "inform[] whether DHS has lawfully terminated TPS protections for [Rubio's] cohort." Rubio Suppl. Letter at 2.  A "trial court . . . is not required to consider what the parties fail to point out." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (internal quotation marks omitted); *see also Bernier v. Moore*, 441 F.2d 395, 396 (1st Cir. 1971) ("The fundamental purpose of habeas corpus would be undermined if the writ were prostituted by holding it out as available upon mere 'notice' or token pleading, without any showing of entitlement.").  It is therefore not sufficient for Rubio's counsel to point to a decision of another judge and assert, without more, that such decision should be considered "persuasive." *See Albrechtsen v. Bd. of Regents of Univ. of Wis. Sys.*, 309 F.3d 433, 436 (7th Cir. 2002) ("Courts are entitled to assistance

---

[7] Because the Court will not assess whether former-Secretary Noem's vacatur and termination decisions were lawful, it need not reach whether such a judicial assessment would be barred by 8 U.S.C. § 1254a(b)(5)(A), which provides that "[t]here is no judicial review of any determination . . . with respect to the designation, or termination or extension of a designation, of a foreign state."

from counsel."); *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 406 (6th Cir. 1992) ("What concept of judicial economy is served when judges . . . are required to do the work of a party's attorney?"); *Dunkel*, 927 F.2d at 956 ("Judges are not like pigs, hunting for truffles buried in briefs.").

The Court therefore declines to overlook the failure of Rubio's counsel to properly present arguments other than preclusion. "In our adversary system, . . . we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008); *see also United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) ("[W]e follow the principle of party presentation."). Courts "do not, or should not, sally forth each day looking for wrongs to right." *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987) (Arnold, J., concurring in denial of rehearing *en banc*).

Turning, then, to Rubio's sole argument—that Judge Chen's December 10, 2025 ruling precludes Respondents from asserting the legality of former-Secretary Noem's vacatur and termination decisions—the Court is not persuaded.[8] "[N]onmutual offensive collateral estoppel simply does not apply against the government," *United States v. Mendoza*, 464 U.S. 154, 162

---

[8] The following discussion assumes that Judge Chen had jurisdiction to issue his December 10 declaratory judgment, but there are strong reasons to believe that is not so. First, the TPS statute provides that "[t]here is no judicial review of any determination . . . with respect to the designation, or termination or extension of a designation, of a foreign state." 8 U.S.C. § 1254a(b)(5)(A); *see also Nat'l TPS All.*, 2026 WL 687355, at \*4-10 (Bumatay, J., dissenting from denial of rehearing *en banc*) (concluding that Judge Chen lacked jurisdiction to hold that the vacatur and termination decisions were unlawful). Second, the Government's appeals of Judge Chen's earlier rulings in *National TPS Alliance v. Noem* may have deprived him of jurisdiction to issue further rulings on the same topic. *See Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."). If, for either of these reasons, Judge Chen lacked jurisdiction to issue his December 10 ruling, then that ruling would not be a basis for collaterally estopping Respondents. *See Old Wayne Mut. Life Ass'n v. McDonough*, 204 U.S. 8, 16 (1907) (explaining that comity between courts "does not prevent an inquiry into the jurisdiction of the court in which the original judgment was given" (internal quotation marks omitted)).

(1984),[9] so in order for a prior ruling to bind the Government, the "subsequent suit [must be] between the same parties or their privies," *Montana v. United States*, 440 U.S. 147, 153 (1979) (internal quotation marks omitted). Rubio was not a plaintiff in *National TPS Alliance v. Noem*, so he cannot use Judge Chen's ruling in that case to preclude Respondents here.[10]

Rubio argues that a mutuality of parties exists because he is a member of the National TPS Alliance, which was a plaintiff in the case before Judge Chen. *See* Petition ¶ 2. But no authority holds that the "same parties" requirement is satisfied when an individual plaintiff is part of a membership organization which previously prevailed in a suit against the Government. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 403 (2024) (Thomas, J., concurring) ("[T]he general [mutuality] rule would mean that preclusion applies only to the association, even though the purpose of the association's suit is to assert the injuries of its members.").

This case also does not fit within any of the six "recognized exceptions" to "the rule against nonparty preclusion" which the Supreme Court identified in *Taylor v. Sturgell*, 553 U.S. 880, 893-95 (2008) (discussing exceptions).[11] And adopting Rubio's view of preclusion would have far-

---

[9] The same is true of the preclusive effect of suits against employees of the federal government acting in their official capacity. *See, e.g.*, *Benenson v. Comm'r of Internal Revenue*, 910 F.3d 690, 697 (2d Cir. 2018); *see also* Michael T. Morley, *Nationwide Injunctions, Rule 23(b)(2), and the Remedial Powers of the Lower Courts*, 97 B.U. L. REV. 615, 628 n.74 (2017) ("*Mendoza* has been applied to federal agencies and officials sued in their official capacities.").

[10] Although several of the Respondents here were not defendants in *National TPS Alliance v. Noem*, that fact does not prevent preclusion. "There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is *res judicata* in relitigation of the same issue between that party and another officer of the government." *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402-03 (1940).

[11] It is not even clear that the exceptions to nonparty preclusion recognized in *Taylor* would apply where, as here, a plaintiff seeks to collaterally estop the Government. *See Benenson*, 910 F.3d at 698 ("While *Taylor* . . . identif[ies] circumstances where a nonparty to an earlier action might be estopped from relitigating the question in a subsequent action, it does so in the context of private-party litigation, nowhere suggesting any expansion of the use of nonmutual offensive collateral estoppel against the government." (internal citation omitted)).

reaching implications, "open[ing] the door for [groups] with [members] in multiple states to secure a favorable judgment in one circuit, then bind the government to that judgment in other circuits." *Nat'l Med. Enters., Inc. v. Sullivan*, 916 F.2d 542, 545 (9th Cir. 1990).  The Court declines to adopt such a novel theory.  *Cf. Chartier v. Marlin Mgmt., LLC*, 202 F.3d 89, 94 (2d Cir. 2000) ("[S]ince the doctrine of collateral estoppel poses a danger of placing termination of the litigation ahead of the correct result, it is narrowly applied.").

Even if the requirements for preclusion were satisfied, "trial courts [have] broad discretion to determine when [offensive collateral estoppel] should be applied."  *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979).  And in this case, it would be unwise to preclude Respondents because it would foreclose further consideration of the propriety of former-Secretary Noem's vacatur and termination decisions—an important legal question—based solely on the result of a single out-of-circuit decision.  *See Env't Def. v. EPA*, 369 F.3d 193, 203 (2d Cir. 2004) ("The petition challenges the actions of a government agency, whose decision concerns a matter of great public importance, . . . [and] the public nature of the issues presented counsels against strict application of collateral estoppel."); *Haitian Ctrs. Council, Inc. v. McNary*, 969 F.2d 1350, 1356 (2d Cir. 1992) ("[T]he interests of finality and judicial economy [furthered by collateral estoppel] may be outweighed by other substantive policies."), *rev'd on other grounds sub nom. Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155 (1993).  The Court sees no reason to allow an "end-run" that would short-circuit consideration of important issues.  *Cf. Trump v. CASA, Inc.*, 606 U.S. 831, 852 n.13 (2025).

To be sure, Rubio's Petition does not actually present arguments for why former-Secretary Noem's vacatur and termination decisions were unlawful.  *See supra*.  But that's precisely the point—Rubio should not be able to use Judge Chen's rulings to dodge the issue.  If Rubio believes the vacatur and termination decisions were unlawful, he must explain why that is so.  His failure

to do so dooms his Petition.

## IV.  Conclusion

For the above reasons, Rubio's Petition is denied.  The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated: March 23, 2026
New York, New York

_____
JOHN P. CRONAN
United States District Judge